UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES B. JOHNSON, as Trustee of the
Johnson Family Trust, and TEMPLETON
GLOBAL INCOME FUND,

                 Plaintiffs,

         -against-

SABA CAPITAL MANAGEMENT, L.P.,
SABA CAPITAL MANAGEMENT GP, LLC,
SABA CAPITAL MASTER FUND, LTD.,
BOAZ R. WEINSTEIN, KAREN
CALDWELL, KETU DESAI, MARK
HAMMITT, and ANATOLY NAKUM,

              Defendants,

      and

FIRST COAST RESULTS, INC.,

             Nominal Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:  _____
DATE FILED:  _1/31/2023_
```

22 Civ. 4915 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs Charles B. Johnson, as trustee of the Johnson Family Trust, and Templeton

Global Income Fund ("GIM" or the "Fund") move for a preliminary injunction.  ECF No. 53.

For the reasons stated below, Plaintiffs' motion for a preliminary injunction is DENIED.

## BACKGROUND[1]

    The Fund is "a closed-end registered investment company under the Investment

Company Act of 1940, 15 U.S.C. §§ 80a-1, *et seq.*"  Compl. ¶ 17, ECF No. 1.  The Johnson

Family Trust is "the owner of at least 125,000 GIM shares."  *Id.* ¶ 16.  Johnson, a trustee of the

Johnson Family Trust, is a Fund shareholder.  *Id.*  GIM "is overseen by its [eleven]-member

---

[1] For purposes of this motion, the Court draws from the complaint, Compl., ECF No. 1, the parties' briefing concerning the instant motion, ECF Nos. 54, 63, 66, 106, the declaration of Scott D. Musoff and the exhibits thereto, ECF No. 55, Musoff's supplemental declaration and the exhibits thereto, ECF No. 67, the declaration of Michael E. Swartz and the exhibits thereto, ECF No. 64, and the declaration of Paul Kazarian, ECF No. 65.

"[b]oard" (the "Board").  PI Mem. at 4, ECF No. 54.  Defendants Saba Capital Management, L.P., Saba Capital Management GP, LLC, Saba Capital Master Fund, Ltd., and Boaz R. Weinstein (together, "Saba") are "a hedge fund and its managers who invest in closed-end funds like GIM." Compl. at 1, ¶ 9.  Saba, "[a]s the owner of nearly 29% of the Fund's shares," is the Fund's "largest shareholder."  PI Mem. at 1.  In 2021, Saba elected four trustees to the Board.  *Id.* at 5.

On April 13, 2022, "GIM disseminated a proxy statement to its shareholders . . . informing them that GIM's annual shareholder meeting would take place on June 6, 2022" (the "Meeting").  Compl. ¶ 7.  GIM also encouraged its shareholders to re-elect a slate of four GIM trustees to serve on the Board (the "GIM Nominees").  *Id.*  The GIM proxy statement "set the record date for the Meeting at April 1, 2022 (meaning that shareholders as of April 1, 2022 could vote.)"  PI Mem. at 6.  On April 14, 2022, Defendants Karen Caldwell, Ketu Desai, Mark Hammitt, and Anatoly Nakum (the "Saba Nominees") disseminated a competing proxy statement to GIM's shareholders.  Compl. ¶ 8.  The Saba Nominees' proxy statement "encourag[ed] GIM shareholders to, among other things, vote for Saba's rival slate of trustees, and ask[ed] shareholders to support Saba's proposal to terminate GIM's long-time investment manager, Franklin Advisers, Inc. ("Franklin")."  *Id.*  Election of the Saba Nominees would give Saba eight of eleven Board seats.  PI Mem. at 1; Compl. ¶ 4.  Two of the Fund's large institutional shareholders, Bulldog Investors LLP ("Bulldog") and Almitas Capital LLC ("Almitas") "initially cast their votes for the GIM Nominees" and against Saba's proposal to terminate Franklin.  PI Mem. at 7.

On June 3, 2022, GIM appeared to have a chance of winning the shareholder vote.  *See* Compl. ¶ 53; PI Mem. at 9; Defs. Opp. at 9, ECF No. 63.  That same day, Weinstein and Paul Kazarian of Saba approached Phil Goldstein, a principal at Bulldog.  *See* Compl. ¶ 55; PI Mem.

at 10; Defs. Opp. at 9.  On June 4, 2022, Saba and Bulldog entered a purchase agreement where, if the GIM Nominees won the contest, "Saba would pay Bulldog 95% of [net asset value ("NAV")], but, if [the Saba N]ominees won, Saba would pay 99% of NAV[.]"  Defs. Opp. at viii, 9–10; *see also* Compl. ¶ 11; PI Mem. at 10 & n.11.  Bulldog then submitted a revised proxy statement casting its vote for Saba.  Defs. Opp. at 10.  Also on June 4, 2022, Weinstein approached Ron Mass, founder of Almitas, and entered a similar purchase agreement.  *Id.*; PI Mem. at 10.  On June 5, 2022, Almitas submitted a revised proxy voting card casting its vote for Saba.  Defs. Opp. at 10.

The Saba Nominees won the shareholder election.  *See* Compl. ¶ 56; PI Mem. at 12; Defs. Opp. at 11.  After the Meeting, Saba filed an amended Schedule 13D/A[2] with the Securities and Exchange Commission ("SEC") "to reflect its increased ownership from 28.87% to 31.44%, a change of 2.5%, after the acquisition of the Bulldog and Almitas shares," Defs. Opp. at 11, and that it had agreed to purchase shares from third parties, *see* ECF No. 64-38 at 5.  *See also* Compl. ¶¶ 63–64; PI Mem. at 13.

On June 12, 2022, Plaintiffs commenced this action, Compl., and moved by order to show cause for a temporary restraining order and preliminary injunction, ECF No. 15.  Plaintiffs allege that Defendants' "false and misleading proxy solicitation" violates Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n, and Rule 14a-9 promulgated by the SEC under the Exchange Act, 17 C.F.R. § 240.14a-9.  Compl. ¶ 1; *see also* PI Mem. at 2–3.  Specifically, Plaintiffs argue that Defendants' failure to file an amended Schedule 13D/A before the Meeting rendered its prior proxy statement false, that Saba's

---

[2] Plaintiffs state that Saba filed the amended Schedule 13D/A on June 7, 2022.  Compl. ¶ 63; PI Mem. at 13.  Saba notes that it filed the document on June 6, 2022.  Defs. Opp. at 10–11.  Both parties refer to the same document in their exhibits supporting their preliminary injunction papers, which is dated June 6, 2022.  ECF Nos. 55-11, 64-38.

"misstatements and omissions [were] material," and that they will cause Plaintiffs injury.  PI Mem. at 12, 16–25.  Plaintiffs contend that Defendants were required to disclose "their accumulation of voting power and any agreements" under Section 13(d) of the Exchange Act and Regulation 13D.  *Id.* at 21 (citing 15 U.S.C. §§ 78m(d)(1)(D), (E); 17 C.F.R. § 240.13d-1).

Plaintiffs move for a preliminary injunction: (1) "enjoining certification of the putative results of the June 6, 2022 shareholder vote"; (2) "preventing the . . . Saba Nominees from being seated or otherwise taking office as trustees"; (3) "requiring Saba to distribute corrective disclosures to shareholders"; and (4) "ordering a shareholder meeting to be scheduled to consider the issues of the June 6, 2022 shareholder meeting on a fully informed basis."  PI Mem. at 3.

## DISCUSSION

### I.   Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *XL Specialty Ins. Co. v. Level Glob. Invs., L.P.*, 874 F. Supp. 2d 263, 270 (S.D.N.Y. 2012) (quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)). "A [party] seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *In re Platinum-Beechwood Litig.*, 378 F. Supp. 3d 318, 326 (S.D.N.Y. 2019) (citation omitted).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation omitted).  "[T]o satisfy the irreparable harm

requirement, [a party] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (citation omitted).

The Second Circuit has "differentiated between injunctions that propose to alter the status quo (mandatory injunctions) and those that merely seek to maintain it (prohibitory injunctions)." *XL Specialty Ins. Co.*, 874 F. Supp. 2d at 271.[3] "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (quotation marks and citation omitted); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011).[4] The party "must also make a strong showing of irreparable harm." *A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (cleaned up). Prohibitory injunctions "may be granted on a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *XL Specialty Ins. Co.*, 874 F. Supp. 2d at 271 (citation omitted).

The parties disagree about the applicable standard. Plaintiffs argue that the relief they seek is prohibitory, but, even if part of the relief they seek could be categorized as mandatory,

---

[3] The status quo is "the last actual, peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). "The 'status quo' in preliminary-injunction parlance is really a 'status quo ante.' This special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *Id.* at 37 n.5 (citations omitted).

[4] This heightened standard has been applied "where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits," *Yang v. Kosinski*, 960 F.3d 119, 127–28 (2d Cir. 2020) (quotation marks and citation omitted), where the injunction "alter[s] the status quo by commanding some positive act," *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).

"[t]he Court should enter a preliminary injunction granting [the relief,] regardless of which standard applies."  ECF No. 115 at 2; *see also* PI Mem. at 14–15.  Plaintiffs state that the status quo, or "[t]he last peaceable uncontested status[,] was that the parties were engaged in a proxy contest based on legally compliant disclosures in advance of an upcoming shareholder meeting."  ECF No. 115 at 2 (quotation marks omitted).  Saba contends that "[t]he preliminary relief sought by Plaintiffs . . . is mandatory[,]" because "it would modify, rather than maintain, the status quo in which Saba's [n]ominees were elected to the GIM Board."  ECF No. 114 at 1.

## II.  Analysis

The Court finds that Plaintiffs' claims do not meet the standard for a preliminary injunction.  In particular, Plaintiffs have not carried their burden of showing irreparable harm.[5] Plaintiffs argue that, without injunctive relief, "Plaintiff Johnson and other shareholders will have been denied their right to fair corporate suffrage and opportunity to either vote or change their votes on an informed basis" and "Saba will likely make transformative changes to the Fund that do not have the support of the majority of shareholders unaffiliated with [Saba's] [t]ransactions and that will cause significant business disruption to the Fund[.]"  PI Mem. at 25–26 (emphasis omitted).  Plaintiffs agree that "denying stockholders their right to cast an informed vote," by itself, does not "constitute[] irreparable harm," *Silberstein v. Aetna, Inc.*, No. 13 Civ. 8759, 2014 WL 1388790, at *4 (S.D.N.Y. Apr. 9, 2014) (citation omitted).  PI Reply at 8, ECF No. 66.  "Because not all misleading proxy statements engender the same harms," the Court must engage in a fact-specific analysis and scrutinize Plaintiffs' claims of "actual harm." *See Silberstein*, 2014 WL 1388790, at *3–4.

---

[5] Because the Court determines that Plaintiffs have not shown irreparable harm under the prohibitory or the mandatory preliminary injunction standards, the Court need not determine which type of injunction is sought here. *See In re Platinum-Beechwood Litig.*, 378 F. Supp. 3d at 326; *A.H. v. French*, 985 F.3d at 176.

An uninformed vote "does not itself amount to irreparable harm" if "the difficulties inherent in unwinding large corporate transactions" "are absent." *Silberstein*, 2014 WL 1388790, at \*4. Such difficulties may involve mergers and tender offers, *id.* at \*3–4, or other changes involving "concrete harms," *id.* at \*5. Plaintiffs, instead of providing factual support for their allegations of concrete harm, rely on inapposite and factually dissimilar caselaw. *See id.* at \*3; *see also* PI Mem. at 26–30; PI Reply at 8–10. Plaintiffs' assertions of harm are speculative, not imminent, and not concrete. For instance, Plaintiffs describe actions Saba allegedly took with other funds, *see* PI Mem. at 27–29, "Saba's failure to identify . . . a third-party replacement manager for the Fund," *id.* at 27, and "consideration[s]" concerning a "potential merger," *id.* at 29, as evidence of irreparable harm.[6] While Plaintiffs state that these actions, if taken, might be "disruptive," *id.* at 28, Plaintiffs do not show how these alleged changes are imminent or would be irreparable or irreversible absent judicial intervention at this time. "[C]onclusory assertions" of irreparable harm are insufficient for injunctive relief. *Silberstein*, 2014 WL 1388790, at \*4; *see also Faiveley Transp. Malmo AB*, 559 F.3d at 118.

Without evidentiary support of irreparable harm, the Court would be entering relief "as a precautionary measure," which it cannot do. *Faiveley Transp. Malmo AB*, 559 F.3d at 119 (citation omitted). Because the Court concludes that Plaintiffs have not shown irreparable harm, it does not reach the other preliminary injunction factors. *Id.* at 118 ("A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." (quotation marks and citation omitted)).

Accordingly, Plaintiffs' motion for a preliminary injunction is DENIED.

---

[6] At the same time, Plaintiffs state that "Saba provided *no specific information* to GIM shareholders about its plans for the Fund if the 2022 Saba Nominees prevailed and it took control." PI Mem. at 6–7.

**CONCLUSION**

For the reasons stated above, the preliminary injunction is DENIED.  By **February 15, 2023**, the parties shall file a letter advising the Court how they wish to proceed.

The Clerk of Court is directed to terminate the motion at ECF No. 53.

SO ORDERED.

Dated: January 31, 2023
      New York, New York

_____
ANALISA TORRES
United States District Judge